The STATE of Ohio ex rel. NOBLE, Relator,

v.

INDUSTRIAL COMMISSION OF OHIO et al., Respondents.

[Cite as *State ex rel. Noble v. Indus. Comm.*, 174 Ohio App.3d 299, 2007-Ohio-6497.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 06AP–1090.

Decided Dec. 6, 2007.

 
 

Heinzerling & Goodman, L.L.C., and Mark Heinzerling, for relator.

Marc Dann, Attorney General, and Stephen D. Plymale, Assistant Attorney General, for respondent Industrial Commission of Ohio.

WHITESIDE, Judge.

{¶ 1} This original action in mandamus was brought by relator, William Noble ("claimant"), seeking a writ ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying claimant's motion for the payment of the full cost of brand-name prescription drugs—Neurontin and Coumadin—and to enter an order granting him full reimbursement for the cost of those prescription medicines.

{¶ 2} Pursuant to Civ.R. 53, this case was referred to a magistrate, who has entered a decision finding that this court should deny the requested writ (attached as Appendix). Claimant has filed objections to the magistrate's decision, contending that "[t]he magistrate erred by failing to apply the proper legal test in adjudicating Mr. Noble's claims under R.C. 1.48 and [Section 28, Article II] of the Ohio Constitution."

{¶ 3} After an independent review of the evidence and the applicable law, this court finds for the reasons that follow that the magistrate correctly found the salient facts and applied the applicable law thereto.

██ {¶ 4} Claimant's basic contention is that prior to the adoption of Ohio Adm.Code 4123–6–21(I) in 2005, claimant had a right to full reimbursement (or payment) for brand-name drugs, which precludes retroactive application of the newly adopted rule to claimant's claim, which originated in 1975, by R.C. 1.48 and Section 38, Article III of the Ohio Constitution. Claimant contends that before adoption of the administrative rule, the only law applicable was R.C. 4123.54(A), providing that employees suffering a work-related inquiry are entitled to receive "the medical, nurse, and hospital services and medicines * * * as are provided by this chapter."

{¶ 5} Claimant also points out that Ohio Adm.Code 4123–6–21, as promulgated in 1997, provided that injured workers were responsible for the difference in cost between brand-name medications and their generic equivalents unless prior authorization was obtained for the brand-name medication. Claimant had ob-

tained authorization for the brand-name medication under Ohio Adm.Code 4123–6–21(F).

{¶ 6} Claimant makes no contention that the commission has applied the new rule retroactively to medicines received prior to adoption of the new rule in 2005 prohibiting payment for brand-name drugs.

{¶ 7} After the October 1, 2005 amendment, Ohio Adm.Code 4123–6–21(I) provided:

> Claimants who request a brand name drug or whose physician specifies a brand name drug designated by "dispense as written" on the prescription for a medication which has an applicable maximum allowable cost price shall be liable for the product cost difference between the established maximum allowable cost price of the drug product and the average wholesale price plus or minus the bureau established percentage of the dispensed brand name drug.

{¶ 8} As the magistrate correctly noted, Section 28, Article II of the Ohio Constitution precludes the General Assembly from passing retroactive laws. However, a law that operates only prospectively and does not affect vested rights is not retroactive. In other words, only if a law takes away or impairs vested rights acquired under existing laws or creates a new obligation or disability with respect to prior transactions or considerations is it retroactive. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489. A claimant's entitlement to worker's compensation payments constitutes a substantive right measured by the statutes in force at the time of injury. *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 46, 623 N.E.2d 55.

{¶ 9} The question thus becomes whether claimant had a vested right to payment for prescribed brand-name drugs prior to October 1, 2005. The commission, as well as the magistrate, concluded that he did not, and we agree that he did not have a vested right to payment for brand-name drugs prior to October 1, 2005. As the magistrate points out, on the date of claimant's injury, R.C. 4123.66 granted the administrator (formerly the commission) the authority to regulate the payment for the cost of prescription drugs that the administrator or commission deems proper. Claimant is not being denied payment for medications. Rather, he is entitled to payment for the necessary medications prescribed by his physician, but in generic rather than brand-name form. Although the physician refers to some reactions to drugs, no evidence was presented showing that the generic equivalents to the drugs in question work any differently or fail to achieve the same results for claimant as the brand-name drugs. Absent such evidence proving a need for brand-name drugs for health and/or therapeutic effect, there is no basis for determining that claimant has been denied a vested right to medication. "Generic equivalent" necessarily means that the drug will have the same therapeutic effect and adverse reactions as the brand-

name drug for the patient receiving the medication. Claimant does not base his claim seeking a writ upon any such claim, even though it was suggested during the administrative proceeding.

{¶ 10} Accordingly, the objections to the magistrate's report are overruled, the magistrate's report as amplified herein is adopted as that of the court, and the requested writ of mandamus is denied.

Objections overruled<br>and writ denied.

FRENCH and McGRATH, JJ., concur.

WHITESIDE, J., retired, of the Tenth Appellate District, sitting by assignment.

## APPENDIX

MACKE, Magistrate.

{¶ 11} In this original action, relator, William Noble, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying his motion for full reimbursement for the cost of two brand-name prescription drugs—Neurontin and Coumadin—and to enter an order granting him full reimbursement for the cost of those prescription drugs. In denying the motion, the commission applied Ohio Adm.Code 4123–6–21(I), which relator claims to be a violation of the constitutional prohibition against retroactive laws.

### Findings of Fact:

{¶ 12} 1. On December 3, 1975, relator injured his right knee, left arm, and shoulder. He later developed a staphylococcus infection in the right knee and a deep vein thrombosis. The industrial claim, No. 75–32390, is a state-fund claim.

{¶ 13} 2. On June 24, 2005, relator's treating physician, John A. Soscia, M.D., wrote:

It has come to our attention that some of the medications that Mr. Nobel [sic] has been taking for quite some time are non-preferred medications. This is a letter to accompany the request form for continuance of these medications. Mr. Noble has undergone numerous surgeries for both his shoulder and knee, has had post-operative infections and has been diagnosed with chronic thrombocytopenia. He continues to have functional and physical limitations secondary to these problems as well as the associated pain. We have continued to treat his chronic pain situation throughout and have tried many different regimens of treatment. Currently, treating him pharmacologically with oxycontin, percocet, zanaflex, and neurontin has had a beneficial reduction in his symptoms. We have tried other forms of short-acting opiods [sic] and muscle

relaxants without the results we are currently seeing. The patient has also had adverse reactions to generic forms of percocet and zanaflex. Based on the results we are currently seeing, we recommend the continuance of the above mentioned medications for the symptomatic treatment of Mr. Noble.

{¶ 14} 3. On January 30, 2006, citing Dr. Soscia's June 24, 2005 letter, relator filed a motion stating:

Claimant * * * hereby requests that he be approved for Neurontin and Coumadin for the allowed conditions in his claim. * * * Mr. Noble cannot take the generic forms of the drugs and they are medically necessary for the allowed conditions in his claim which have rendered him PTD.

{¶ 15} 4. On February 8, 2006, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order denying relator's January 30, 2006 motion. The order states:

Your request for full reimbursement of neuro[n]tin & coumadin brand name drugs are denied. Reimbursement for all outpatient drugs are limited to the amount allowed by BWC's fee schedule. You are responsible for the total difference in cost between the brand name drug & the amount allowed for it by BWC's fee schedule[.] [I]f your physician designates that you receive or choose to receive this brand name [drug] instead of it's [sic] generic equivalent [and] you do not wish to pay the difference in coast [sic], other options available to you are to have your prescribing physician agree either to have a generic drug dispense[d] or have * * * [him] prescribe a different drug for you.

This decision is based on:

OAC 4123–6–2[1](I) which states the BWC does not have to reimburse in full for any brand name drug when an equivalent generic drug is available. An equivalent generic drug is available for the requested brand name drug.

{¶ 16} 5. Relator administratively appealed the bureau's February 8, 2006 order.

{¶ 17} 6. Following a March 16, 2006 hearing, a district hearing officer ("DHO") issued an order stating:

The order of the Administrator, dated 02/02/2006, is affirmed.

It is the order of the District Hearing Officer that the C–86, filed 01/30/2006, is denied.

The request for payment of brand name medications in lieu of generic drugs is denied. Pursuant to O.A.C. 4123–6–21( [I] ) the Bureau of Workers' Compensation is no longer responsible for payment of the difference between the cost of a generic medication versus the cost of a brand name equivalent.

The injured worker's argument that the administrative rule is unconstitutional because it retroactively infringes on a fundamental right is rejected.

First the District Hearing Officer finds that the rule is being applied prospectively, not retroactively.

Second, though it is well established that the law in effect at the time of the injury is controlling with respect to compensation and benefits, there was no provision in effect in this claim entitling the injured worker to brand name medications. Accordingly, the District Hearing Officer finds no basis for the argument that any fundament right has been abridged.

{¶ 18} 7. Relator administratively appealed the DHO's order of March 16, 2006.

{¶ 19} 8. On March 23, 2006, Dr. Soscia wrote:

June 24, 2005 I wrote a letter explaining the need for this patient to use no generic drugs. In that letter it was my intent to include the medications neurontin, and oxycontin as medications to be non generic. As these medications were mentioned throughout the body of the letter they were inadvertently not mentioned in the second paragraph when I referred to adverse reactions to medications.

{¶ 20} 9. Following an April 19, 2006 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order. The SHO's order explains:

The motion filed by the injured worker essentially seeks reimbursement for the difference in cost between generic brand drugs and the cost for the drugs issued under the brand name. Specifically, this deals with the medications Neurontin and Coumadin. The injured worker's doctor prescribed these drugs for the allowed conditions, and that issue is not disputed. However, the doctor also indicated that the prescriptions were to be dispensed as written, and not substituted by generic drugs. Per Ohio Administrative Code Rule 4123-6-21(I), the Bureau will only reimburse the cost for the generic type of drug. Any difference in cost between the generic drug and the name brand drug is left to be the injured worker's responsibility. This new Bureau rule was effective 10/01/2005. The Bureau has issued guidelines indicating that this policy applies to all claims, regardless of the date of injury.

Counsel for the injured worker cites the case of *Gregory v. Flowers* in regard to application of substantive versus procedural rules. Argument of counsel is noted, but the rule at issue is found to be procedural in nature and the Bureau of Workers' Compensation policy and interpretation is otherwise found to be valid and binding.

Therefore, the request for reimbursement for the cost of the difference in price between name brand and generic Neurontin and Coumadin is denied.

{¶ 21} 10. On May 18, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 19, 2006.

{¶ 22} 11. On October 27, 2006, relator, William Noble, filed this mandamus action.

## Conclusions of Law

{¶ 23} The issue is whether the commission's application of Ohio Adm.Code 4123–6–21(I), effective October 1, 2005, to a 1975 claim violates the prohibition against retroactive laws set forth at Section 28, Article II, Ohio Constitution.

{¶ 24} Finding that the commission's application of Ohio Adm.Code 4123–6–21(I) to the 1975 claim does not violate the constitutional prohibition against retroactive laws, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 25} Effective October 1, 2005, the administrator of the bureau promulgated Ohio Adm.Code 4123–6–21, which states:

(F) Payment for medications to pharmacy providers shall include a product cost component and a dispensing fee component.

(1) The product cost component shall be the lesser of the following: maximum allowable cost, if applicable, or the average wholesale price of the commonly stocked package size plus or minus a percentage. The percentage amount added or subtracted from the average wholesale price shall be determined by the bureau, and shall be subject to annual review.

(2) The dispensing fee component shall be a flat rate fee, which shall be subject to annual review.

* * *

(H) The bureau may establish a maximum allowable cost for medications which are pharmaceutically and therapeutically equivalent, that is, contain identical doses of the active ingredient and have the same biological effects as determined by the food and drug administration (FDA) and designated by an "A" code value in the FDA publication, "Approved Drug Products With Therapeutic Equivalence Evaluations." The methodology used to determine a maximum allowable cost for a qualified drug product shall be determined by the medical policy department and shall be subject to annual review. The bureau may choose to utilize the maximum allowable cost list of a vendor or develop its own maximum allowable cost list.

(I) Claimants who request a brand name drug or whose physician specifies a brand name drug designated by "dispense as written" on the prescription for a medication which has an applicable maximum allowable cost price shall be liable for the product cost difference between the established maximum allowable cost price of the drug product and the average wholesale price plus or minus the bureau established percentage of the dispensed brand name drug.

{¶ 26} As previously noted, the commission, through its SHO, denied relator's motion based upon Ohio Adm.Code 4123–6–21(I). Apparently, because there are other medications that are pharmaceutically and therapeutically equivalent to the brand name drugs Neurontin and Coumadin, the bureau has established a "maximum allowable cost" applicable to those two brand name drugs. Parenthetically, Ohio Adm.Code 4123–6–21 does not use the term "generic" or "generic equivalent" that the bureau and commission have used in their orders. Presumably, "generic equivalent" means "pharmaceutically and therapeutically equivalent," as referred to in the rule. Because relator's treating physician has indicated that relator must use the brand-name drugs rather than their generic equivalents, the commission held relator liable for the "product cost difference."

{¶ 27} It is well settled that a claimant's entitlement to workers'-compensation payments is a substantive right measured by the statutes in force at the time of injury rather than by subsequently enacted statutes. *State ex rel. Brown v. Indus. Comm.* (1993), 68 Ohio St.3d 45, 46, 623 N.E.2d 55.

{¶ 28} Section 28, Article II of the Ohio Constitution denies to the General Assembly the power to pass retroactive laws. *State ex rel. Kilbane v. Indus. Comm.* (2001), 91 Ohio St.3d 258, 744 N.E.2d 708. However, this prohibition has reference only to laws that create and define substantive rights and has no reference to remedial legislation. Id.

{¶ 29} Every statute that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already passed, must be deemed retrospective or retroactive. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 106, 522 N.E.2d 489.

{¶ 30} According to relator, Ohio Adm.Code 4123–6–21(I), effective October 1, 2005, cannot be applied to his 1975 claim, because to do so violates the constitutional provision against the enactment of retroactive laws. According to relator, because there was no administrative rule in effect on the date of his injury that denied him a right to full reimbursement of the cost of brand name drugs as prescribed by his physician, the commission cannot apply Ohio Adm.Code 4123–6–21(I) to deny him full reimbursement today. The magistrate disagrees.

{¶ 31} On December 3, 1975, the date of relator's industrial injury, R.C. 4123.66 stated [1]:

---

1. {¶ a} Am.Sub.H.B. No. 417, 135 Ohio Laws, Part I, 1710–1711. R.C. 4123.66(A) currently states:

{¶ b} In addition to the compensation provided for in this chapter, the administrator of workers' compensation shall disburse and pay from the state insurance fund the amounts for medical, nurse, and hospital services and medicine as the administrator deems proper[.]

In addition to the compensation provided for in chapter 4123. of the Revised Code, the industrial commission shall disburse and pay from the state insurance fund such amounts for medical, nurse, and hospital services and medicine as it deems proper[.] * * * The commission may adopt rules and regulations with respect to furnishing medical, nurse, and hospital service and medicine to injured or disabled employees entitled thereto, and for the payment therefor.

{¶ 32} On December 3, 1975, the date of relator's industrial injury, R.C. 4123.54 stated [2]:

Every employee, who is injured or who contracts an occupational disease * * * is entitled to receive, either directly from his employer as provided in section 4123.35 of the Revised Code, or from the state insurance fund, such compensation for loss sustained on account of such injury, occupational disease or death, and such medical, nurse, and hospital services and medicines * * * as are provided by sections * * * 4123.01 to 4123.94, inclusive, of the Revised Code.

{¶ 33} It is clear from a plain reading of the statutes in force on the date of relator's injury that he acquired no vested right to full reimbursement for the cost of brand-name drugs prescribed by his treating physician for treatment of his industrial injury. As it stated on the date of his industrial injury, R.C. 4123.66 gave to relator only the right to have the commission pay such amounts for "medicine as it deems proper." Also, R.C. 4123.66 gave the commission authority to adopt rules and regulations with respect to payment for the furnishing of medications.

{¶ 34} Pursuant to the authority granted under R.C. 4123.66 and 4123.54, regulations have been promulgated and repealed from time to time regarding payment for medications.

---

* * * The administrator may adopt rules, with the advice and consent of the bureau of workers' compensation board of directors, with respect to furnishing medical, nurse, and hospital service and medicine to injured or disabled employees entitled thereto, and for the payment therefor. * * *

2. {¶ a} Am.Sub.H.B. No. 470, 128 Ohio Laws, 755–756. R.C. 4123.54(A) currently states:

{¶ b} Every employee, who is injured or who contracts an occupational disease, and the dependents of each employee who is killed, or dies as the result of an occupational disease contracted in the course of employment * * *

{¶ c} * * *

{¶ d} * * * is entitled to receive, either directly from the employee's self-insuring employer * * * or from the state insurance fund, the compensation for loss sustained on account of the injury, occupational disease, or death, and the medical, nurse, and hospital services and medicines * * * as are provided by this chapter.

{¶ 35} Effective January 1, 1978, the commission and the bureau promulgated rules regarding the payment for medications. Neither the commission's rule, former Ohio Adm.Code 4121–17–23, nor the bureau's rule, former Ohio Adm.Code 4123–7–23, restricted reimbursement for the cost of brand-name drugs that have a generic equivalent.

{¶ 36} Effective January 27, 1997, the bureau promulgated former Ohio Adm.Code 4123–6–21, which stated:

(F) Claimants who request a brand name drug or whose physician specifies a brand name drug designated by "dispense as written" on the prescription for a medication which has an applicable maximum allowable cost price shall be liable for the product cost difference between the established maximum allowable cost price of the drug product and the average wholesale price plus or minus the bureau established percentage of the dispensed brand name drug, if prior authorization for the brand name drug is not obtained by the prescriber.

{¶ 37} Contrary to relator's suggestion, none of the repealed rules promulgated by the commission or bureau gave relator a vested right to the continued policy set forth in any of those rules. This is so because even on the date of injury, R.C. 4123.66 has granted to the administrator and formerly the commission the authority to regulate the payment for the cost of prescription drugs as the administrator or commission deems proper.

{¶ 38} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.